UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CYNTHIA A. MAYNARD,       ) | |
|     Plaintiff,       ) | |
| ) | Civil Action No. 3:11-00547 |
| v.       ) | Judge Wiseman/Brown |
| ) | |
| MICHAEL ASTRUE,       ) | |
| Commissioner of Social Security,       ) | |
|     Defendant.       ) | |

To:     The Honorable Thomas Wiseman, Senior Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act (the "Act"), as amended. Currently pending before the Magistrate Judge are Plaintiff's Motion for Judgment on the Record and Defendant's Response. (Docket Entries 6, 7, 10). The Magistrate Judge has also reviewed the administrative record ("Tr."). (Docket Entry 4). For the reasons set forth below, the Magistrate Judge **RECOMMENDS** the Plaintiff's Motion be **DENIED** and this action be **DISMISSED**.

## I. INTRODUCTION

Plaintiff filed her application for SSI and DIB on February 6, 2008, with an alleged onset date of December 15, 2006. (Tr. 162-39). Her claim was denied initially and on reconsideration. (Tr. 75-78, 81-84).

At Plaintiff's request, a hearing was held before ALJ Brian Dougherty on February 10, 2010. (Tr. 28-67). The ALJ issued his decision denying benefits on March 16, 2010. (Tr. 7-22).

In his decision denying Plaintiff's claims, the ALJ made the following findings of fact and

1

conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2011.
2. The claimant has not engaged in substantial gainful activity since December 15, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
3. The claimant has the following severe impairments: Obesity; Degenerative Disc Disease; Fibromyalgia; Carpal Tunnel Syndrome, status post surgical release (20 CFR 404.1520(c) and 416.920(c)).
4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to occasionally lift and/or carry between five to ten pounds, consistent with the performance of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except as follows: The claimant is limited to jobs that allow for sitting for up to 45 minute intervals, standing for up to 60 minute intervals, and the ability to change between these positions at will. The claimant is further limited to jobs that do not require walking for any distance beyond a one-block radius. She is further limited to jobs that involve only frequent handling and fingering.
6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
7. The claimant was born on July 11, 1963, and was 43 years old, which is defined as a younger individual, age 18-44, on the alleged disability onset date. The claimant subsequently changed age category to a younger individual, age 45-49 (20 CFR 404.1563 and 416.963).
8. The claimant has a limited education and is able to communicate in English. (20 CFR 404.1564 and 416.964).
9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).
11. The claimant has not been under a disability, as defined in the Social Security Act, from December 15, 2006, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 7-22).

The Appeals Council denied Plaintiff's request for review on April 5, 2011. (Tr. 1-3). This action was timely filed on June 8, 2011. (Docket Entry 1).

## II. REVIEW OF THE RECORD

Plaintiff began seeing her primary care physician, Dr. Kenneth Demirjian, in the 1990s. (Tr. 236-358). Her reports of migraine headaches and back pain date to 1995-96. On December 17, 2007, Plaintiff had a follow-up appointment for headaches and depression, and she reported feeling "well with no complaints," other than a "decreased energy level." (Tr. 239). Her medication was considered effective with no side effects, and she slept well. *Id*.

Plaintiff sought treatment from Dr. Son Le, a pain specialist, beginning in Fall 2007. (Tr. 672-745). On October 29, 2007, Plaintiff described her pain as a 9 out of 10 with no treatment and an average of 6 out of 10. Dr. Le diagnosed her with fibromyalgia based on greater than 11 out of 18 tender points and prescribed narcotics. (Tr. 733-34). On November 26, 2007, Plaintiff noted Lortab was working with no side effects other than constipation, and she had gone to aquatic therapy. (Tr. 731-32). On January 17, 2008, Plaintiff reported doing better with increased Lortab; she had exercised fairly regularly and was encouraged to increase her aerobic activity through regular exercise. (Tr. 729). On February 22, 2008, in response to Plaintiff's complaints of increased lower back pain radiating into the right leg, Dr. Le ordered an MRI, which showed a disc protrusion at L2-3, small right foraminal disc protrusion at L3-4, and stable mild spondylosis with mild lateral bilateral foraminal stenosis at L4-5. (Tr. 742-43). At her March 20, 2008, Dr. Le noted the MRI showed degenerative disc disease and disc protrusions and offered Plaintiff epidural steroid injections. (Tr. 726).

In a March 21, 2008 pain questionnaire and function report, Plaintiff reported her pain began in early 2003 and was located in her hips, back, legs, neck, elbow, wrists, and muscles. (Tr.

3

175-86). Her pain changes daily and is mostly constant. It is brought on by stress, activity, non-activity, sitting for too long, and laying or standing for too long. Pain medications do not completely relieve her pain, and sleeping pills affect her memory. (Tr. 175). Plaintiff wears braces on her wrists due to carpal tunnel syndrome. (Tr. 176). She tries to exercise daily and breaks up chores into weekly activities. (Tr. 176). Her daily activities consist of getting her son ready for school, performing light chores, sometimes exercising or doing physical therapy, cooking if she feels up to it, and resting or taking a nap. (Tr. 179). Chores consist of laundry, sweeping, mopping, and light cleaning. She can no longer do yard work. (Tr. 181). She shops for groceries once per week. (Tr. 182). She can walk 30 minutes and must rest 20 to 30 minutes before resuming. (Tr. 184). Her pain and medication affect sleeping. (Tr. 180). Her memory is much worse now than before her pain started. (Tr. 186).

Plaintiff started epidural steroid injections in Dr. Le's office on April 2, 2008 and had additional injections on April 17 and April 30. On May 14, 2008, Dr. Le noted Plaintiff had done well with injections and noted improvement in Plaintiff's pain symptoms. (Tr. 696).

Plaintiff reported to Saint Thomas Hospital's emergency room on May 12, 2008, complaining of weakness and numbness in her right side, which she believed to be a stroke. (Tr. 378-406). The treating physicians believed it was either related to her fibromyalgia or hemiparesthesias (panic attack variant). *Id*.

Joe G. Allison, M.D., submitted a consulting RFC assessment dated May 15, 2008. (Tr. 477-84). He believed Plaintiff could occasionally lift 20 pounds and frequently lift 10; could stand and/or walk 6 hours and sit 6 hours; and was limited in handling. Her RFC was reduced because he found her allegations of diffuse arthralgia pain credible. *Id.* An RFC assessment by consultant Frank R. Pennington, M.D., dated September 28, 2008, was identical to Dr. Allison's. (Tr. 516-

4

23).

On June 11, 2008, Dr. Le noted Plaintiff was doing well with her current medications and was not experiencing side effects. (Tr. 695).

Consultant Rebecca P. Joslin, Ed.D., submitted a psychiatric review technique dated September 8, 2008. (Tr. 524-37). She believed Plaintiff's mental impairments were not severe, with mild restrictions in activities of daily living; mild difficulties in maintaining social functioning; and mild difficulties in maintaining concentration, persistence, or pace. *Id*.

On September 3, 2008, Plaintiff reported to Dr. Le that she had not been compliant in taking her opiates and was out for a week because she took more than prescribed during a recent trip. (Tr. 691). On October 1, 2008, she noted her medications provided effective pain control, even after she had stepped off a curb and twisted her back. (Tr. 689).

Dr. Le completed a treating relationship inquiry form dated October 2, 2008. (Tr. 674-69). He noted Plaintiff could not reasonably be expected to be reliable in attending work 8 hours per day 40 hours per week. Her pain was severe, and concentration and sleep were adversely affected. She would need additional breaks. In response to the question, "Have the above limitations lasted or do you expect they will last for 12 consecutive months or longer," Dr. Le wrote in, "Almost 12 months."

Plaintiff reported her medication was providing fairly good pain control on October 29, 2008, and she exercised at home regularly. (Tr. 687). On November 11, 2008, Dr. Le administered facet blocks. (Tr. 685). Plaintiff reported no pain after the facet blocks but experienced headaches and pain the next day. The pain medications were controlling her pain fairly well with no side effects. (Tr. 683).

Plaintiff saw Dr. N. Garrett Powell on December 1, 2008, complaining of chronic low back

5

pain. (Tr. 539-40). Plaintiff noted she had this pain for 5 years, but the pain intensified after a fall she suffered while visiting California two years prior. An MRI of her lumbar spine showed some degenerative changes. There was no tenderness, her strength was 5/5, and she had a normal gait. Dr. Powell noted no evidence of radiculopathy and discussed referring Plaintiff to a bariatric surgeon to decrease her weight.

Approximately one week later, on December 9, 2008, Plaintiff first sought treatment from Dr. Michael S. LaDouceur. (Tr. 555-80). She complained of numbness, tingling, and pain in both hands beginning one year prior, and Dr. LaDouceur diagnosed carpal tunnel syndrome. (Tr. 574-76). He suggested carpal tunnel release surgery for both hands, and she had the surgeries on December 22, 2008 and March 26, 2009. (Tr. 568-69, 559-90). Her post-operation follow-up appointments noted no numbness or tingling, minimal pain, and a full range of motion and 5/5 strength in both hands. (Tr. 555-67).

On December 16, 2008, Plaintiff told Dr. Le that the lumbar facet blocks did not help, and her pain was at an 8 on a 10-point scale, with an average pain of 7. (Tr. 724). On January 16, 2009, SIJ arthrograms were performed. (Tr. 722). At a follow-up appointment on February 13, 2009, Plaintiff noted the injection helped "some," but she was not able to lift anything. The increase in her Lyrica dosage made a difference but caused occasional nausea. She had no other drug side effects, and her pain was an average of 8 on a 10-point scale. (Tr. 720-21).

Plaintiff was referred by Dr. LaDouceur to Star Physical Therapy in January 2009 for her right hand carpal tunnel syndrome. (Tr. 542-53). She was discharged as non-compliant on March 5, 2009.

Plaintiff saw Dr. Le on April 14, 2009, with an average pain level of 6 on a 10-point scale. (Tr. 716). Lyrica caused weight gain, and her pain medications worked sometimes but wore off too

quickly when she was overly active. (Tr. 716). On May 13, 2009, Plaintiff complained of her pain worsening, at an average of 8 on a 10-point scale. She had no drug side effects, and her activity level was not very high. (Tr. 714).

Plaintiff continued to receive treatment from Dr. Demirjian in late 2008 and 2009, primarily for continued treatment for her chronic conditions. (Tr. 582-670). She consistently reported exercising, even though she continued to gain weight. *Id*. On November 26, 2008, she reported walking 30 minutes or more three times per week. On February 3, 2009, she reported walking five times per week, either outside or at the mall. On April 30, 2009, she reported walking five times per week and noted she has no side effects with her medication. On June 2, 2009, she sought treatment for hand pain and contusions following a fall at Kroger on May 28, 2009.

On June 10, 2009, Plaintiff sought treatment from Dr. Le because her pain had worsened after falling and injuring her left shoulder. He prescribed trigger point injections. (Tr. 712). At an appointment on August 11, 2009, Plaintiff's pain averaged a 4 on the 10-point scale, and her medications worked except when she was more active. A TENS unit was very helpful, and she was attempting walking and physical therapy. (Tr. 679). Although Plaintiff reported lower back pain that radiates through her hips down to her toes on September 8, 2009, she noted her medications work unless she overdoes it, and she was able to walk 3 times a week and found physical therapy very helpful. (Tr. 677).

On October 29, 2009, Plaintiff had a lap band procedure performed for weight reduction. (Tr. 771-72).

On December 1, 2009, Plaintiff reported her pain was worse since her last visit. (Tr. 675). She had been doing a lot of cleaning and moving boxes around her home, and her medications were not working well. An MRI of her lumbar spine on December 4, 2009 showed mild multilevel

7

lumbar spondylosis, with no significant change since her prior MRI. (Tr. 749). Within the month, on December 29, 2009, Plaintiff reported pain at an average of a 4 on a 10-point scale, with no side effects from the medication. (Tr. 747). Her report on January 26, 2010 was similar. (Tr. 672).

At her hearing, Plaintiff testified her pain is mostly related to her fibromyalgia, and she feels like she's "bruised all over" her body. (Tr. 43). After she had carpal tunnel surgery, her hands become sore rather than numb, and her current issues with her hands are from fibromyalgia, not carpal tunnel. (Tr. 46). She sometimes cannot grip well but has no problems using pens, pencils, or eating utensils. (Tr. 59).

Plaintiff fell in December 2006 while out of state. (Tr. 43). She stepped off the curb and fell. *Id*. She did not get medical treatment at the time. *Id*.

Plaintiff gets migraines with paralysis, approximately ten to fifteen headaches per month. (Tr. 46-47). She has gone to the hospital about six or seven times for migraines since 2006. (Tr. 47). It takes approximately two days for her to recover from a migraine. (Tr. 47-48).

Plaintiff testified she has lower back pain caused by bulging discs and arthritis. (Tr. 48). Her back hurts when she is standing or sitting for a long period of time. *Id*. Plaintiff estimates she can sit about 45 minutes at a time. (Tr. 49). She is up and down all day at home and raises her legs when seated, about half the day. (Tr. 49-50, 58). She can stand 45 minutes to one hour before she has to change positions. (Tr. 50). She could not stand 6 hours in a workday due to pain. (Tr. 50).

Plaintiff takes morphine and Percocet for fibromyalgia and back pain. (Tr. 48-49). She testified her medication causes memory loss, and she may not be able to remember or carry out instructions. (Tr. 49). She would not be able to do typing on a computer or use a mouse because she gets tired out as a side effect of her medication. (Tr. 53). One medication has caused Plaintiff to gain a significant amount of weight. (Tr. 38).

Plaintiff walks about an hour a day as exercise. (Tr. 50-51). She also exercises by lifting cans in the air about twice a week. (Tr. 52).

She takes her teenaged son to school every morning and runs errands once a week. (Tr. 39). She goes to the bank and grocery store, but her son helps her at the grocery store. (Tr. 54). She goes grocery shopping approximately three times per month. (Tr. 54). She is able to walk independently when she shops. (Tr. 54-55). Her son vacuums, sweeps, shops for groceries, lifts anything heavy, and cuts the grass. (Tr. 56-57). Plaintiff is able to cook, wash dishes, and do laundry. (Tr. 57).

In December 2009, Plaintiff reported to Dr. Le that she injured her back while cleaning and moving boxes around the house. (Tr. 60-61). In response to the ALJ's questions about this event, Plaintiff noted the boxes were totes containing Christmas items and weighed about 10 pounds each. (Tr. 60-61). She cleaned and moved boxes for approximately one hour and had to stop. (Tr. 61).

Plaintiff naps for approximately two to three hours two or three days a week, when she overdoes it. (Tr. 56). She sleeps about five hours at night, which is not enough to feel refreshed. Tr. 56).

Vocational expert ("VE") Michelle McBroom Weiss testified regarding the availability of jobs for a hypothetical individual with a given residual functional capacity ("RFC"). The ALJ asked Ms. Weiss whether a hypothetical individual who is 46 years old, with an 8th grade education, could do Plaintiff's previous work if she could occasionally lift 20 pounds; could frequently lift 10 pounds; could sit, stand, or walk up to 6 hours per day; and be limited to frequent handling. (Tr. 62). Ms. Weiss believed such an individual could perform Plaintiff's previous positions at the light exertional level. (Tr. 63).

The ALJ then asked the VE whether the same individual could perform Plaintiff's previous work if she could occasionally lift 5 to 10 pounds; could sit for 45 minute intervals and stand up to 1 hour intervals with the requirement that she be able to change positions at will; could walk within a one-block radius; and was limited to frequent handling and fingering. (Tr. 64). Ms. Weiss answered that the hypothetical individual could not perform Plaintiff's past relevant work but could perform other jobs, including sedentary information clerk (1,400 in Tennessee/85,000 nationwide); light information clerk (1,500 in Tennessee/86,000 nationwide); sedentary food and beverage clerk (400 in Tennessee/18,000 nationwide); and sedentary security monitor (200 in Tennessee/16,000 nationwide). (Tr. 65). If the hypothetical individual had the additional limitations of reduced work hours, additional breaks, and up to two absences per month, no jobs would be available. *Id.*

### III. PLAINTIFF'S STATEMENT OF ERROR AND CONCLUSIONS OF LAW

Plaintiff argues that the ALJ erred by failing to assign the proper weigh to Dr. Le's opinion, by failing to consider the effect of bilateral carpal tunnel syndrome on her ability to work, and by failing to comply with SSR 96-8p, regarding sustained work activity, when determining Plaintiff's RFC.

A.   <u>Standard of Review</u>

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exits in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept

as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner*, 105 F.3d 244, 245 (6th Cir. 1996). Even if the evidence could also support a difference conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). However, if the record was not considered as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985).

B.  Proceedings at the Administrative Level

The Claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

1.  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

2.  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

3.  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent; if a listing is met or equaled, benefits are owing without further inquiry.

4.  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in

---

[1] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, Appendix 1.

>    light of his or her residual functional capacity (*e.g.*, what the claimant can still do despite his or her limitations); by showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.
>
>    5.   Once the claimant establishes a *prima facie* case of disability, it becomes the Commissioner's burden to establish the claimant's ability to work by providing the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. *See Wright v. Massanari*, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.*; *see also Moon*, 923 F.2d at 1181. In such cases where the grids do not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through VE testimony. *See Wright*, 321 F.3d at *616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); *see also Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

C.   The ALJ Properly Considered Dr. Le's Opinions

Plaintiff argues the ALJ should have assigned controlling weight to Dr. Le's opinions that Plaintiff could not work full time. An ALJ should give enhanced weight to the findings and opinions of treating physicians since these physicians are the most able to provide a detailed

description of a claimant's impairments. 20 C.F.R. § 404.1527(d)(2). Further, even greater weight should be given to a physician's opinions if that physician has treated the claimant extensively or for a long period of time. 20 C.F.R. § 404.1527(d)(2)(I)-(ii). Moreover, if there is contrary medical evidence, the ALJ is not bound by a physician's statement and may also reject it if that statement is not sufficiently supported by medical findings. 20 C.F.R. § 404.1527(d); *Cutlip v. Secretary of H.H.S.*, 25 F.3d 284 (6th Cir. 1994).

While the ALJ is not bound by the opinions of Plaintiff's treating physicians, the ALJ is required to set forth some sufficient basis for rejecting these opinions. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). In discrediting the opinion of a treating source, the ALJ must consider the nature and extent of the treatment relationship, the length of the treatment relationship and the frequency of examinations, the medical evidence supporting the opinion, the consistency with the opinion with the record as a whole, the specialization of the treating source, and any other factors which tend to support or to contradict the opinion. 20 C.F.R. § 404.1527(d)(2); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004). Additionally, it should be noted that a treating physician's statement that the claimant is "disabled" does not bind an ALJ as the definition of disability requires consideration of both medical and vocational factors. 20 C.F.R. § 404.1527(e)(1); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

Plaintiff specifically objects to the ALJ's treatment of Dr. Le's opinion that she would not be expected to be reliable in working full-time. (Tr. 19-20). Dr. Le's opinion, dated October 2, 2008, indicated Plaintiff could not be reasonably expected to be reliable in attending work 8 hours per day, 40 hours per week and would need additional breaks. (Tr. 674-76). He based this opinion on Plaintiff's severe pain, and he noted her concentration and sleep are adversely affected. *Id.*

13

However, when asked whether the limitations lasted or were expected to last for 12 consecutive months or longer, Dr. Le wrote in the answer, "almost 12 months." *Id*. The ALJ evaluated Dr. Le's treatment records and opinion and gave his opinion little weight for at least four reasons. (Tr. 19-20). The ALJ found that Dr. Le's medical records did not support the opinion, that Plaintiff's carpal tunnel had improved post-surgery, that Plaintiff's daily activities as reported to Dr. Le were not limited, and that Dr. Le's opinion did not indicate Plaintiff's impairments would last for twelve months or longer. *Id*. Plaintiff argues that Dr. Le's opinion is consistent with Plaintiff's medical records and with the treatment notes of Dr. Demirjian, Plaintiff's primary care physician.

The Magistrate Judge believes, however, that the ALJ properly considered the opinion of Dr. Le and had substantial evidence for rejecting it. The ALJ clearly considered the factors in 20 C.F.R. § 404.1527(d)(2) and determined that Dr. Le's opinion was not entitled to controlling weight. As noted by the ALJ, Plaintiff's reports to Dr. Le around the same time as his opinion indicate she was able to control her pain with medication and exercise regularly. (Tr. 687, 689, 691). In addition, Dr. Le's vague reference to Plaintiff's limitations lasting "almost 12 months" provides additional evidence for the ALJ's rejection of Dr. Le's opinion. In short, the Magistrate Judge believes the ALJ had sufficient evidence for rejecting Dr. Le's opinion.

D.    <u>The ALJ Considered the Effects of Plaintiff's Bilateral Carpal Tunnel Syndrome</u>

Plaintiff argues that the ALJ erred by deeming Plaintiff's carpal tunnel syndrome "severe" but including fingering limitations merely to give Plaintiff's allegations of limitations the benefit of the doubt. Plaintiff essentially objects to the ALJ's opinion that Plaintiff can engage in frequent handling and fingering. The Magistrate Judge, however, believes the ALJ's decision is supported by substantial evidence.

With respect to Plaintiff's carpal tunnel, the two release surgeries performed in 2008 and

14

2009 were successful. (Tr. 555-80). Dr. LaDouceur noted full range of motion and full strength in both hands approximately one month following surgery. (Tr. 555-5, 564). Plaintiff did not tell Dr. Le she had hand problems following the release. *See* Tr. 672-745. She had hand pain following a fall on May 28, 2009 and suffered from contusions, and Dr. Demirjian found no reason to treat her hand pain with anything other than ice, rest, and exercises. (Tr. 617-18). At her hearing, Plaintiff testified her hands get sore rather than numb after her carpal tunnel surgery, and this is a result of her fibromyalgia, not carpal tunnel syndrome. (Tr. 44-46). The ALJ noted these facts in his opinion. (Tr. 12-13). He concluded that including fingering limitations in the RFC was "only to provide the benefit of the doubt, and to credit the claimant's testimony, as best as the evidence will allow, her complaint of soreness in that hand." (Tr. 13).

The Magistrate Judge believes the ALJ had significant evidence for determining Plaintiff's RFC included some fingering and handling limitations. The ALJ credited Plaintiff's testimony that she was having hand pain, but not numbness, and accordingly limited her RFC. The Magistrate Judge does not believe this decision may be overturned given the medical evidence in the record.

E.   The ALJ's RFC Finding Complied with SSR 96-8p

Plaintiff argues that the ALJ failed to comply with SSR 96-8p by failing to discuss her "ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis." SSR 96-8p. This argument is primarily a restatement of Plaintiff's objection to the ALJ's rejection of Dr. Le's opinion. For the reasons set forth above, the Magistrate Judge believes the ALJ had sufficient evidence for his treatment of Dr. Le's opinion.

Plaintiff also argues that the non-examining state physicians and psychologist found her allegations regarding her activities credible. The undersigned finds this argument confusing, as Dr. Allison's and Dr. Pennington's suggested RFCs are actually less restrictive than the ALJ's

15

determined RFC. (Tr. 477-84, 516-23). While Dr. Allison and Dr. Pennington may have found Plaintiff's allegations credible, they nevertheless believed she was able to work based on her medical records. Moreover, the ALJ credited Plaintiff's testimony in determining her RFC. (Tr. 20). Plaintiff has reported household cleaning activities, including moving 10-pound boxes, as well as sitting up to 45 minutes and standing up to 1 hour. The Magistrate Judge believes the ALJ had substantial evidence for determining Plaintiff's RFC and complied with SSR 96-8p in doing so. He properly evaluated and rejected Dr. Le's opinion, as well as Plaintiff's allegations.

## IV. RECOMMENDATION

For the reasons set forth above, the Magistrate Judge **RECOMMENDS** that Plaintiff's Motion be **DENIED** and this action be **DISMISSED**.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objection to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc).

ENTERED this 12th day of December, 2012.

/S/ Joe B. Brown
JOE B. BROWN
United States Magistrate Judge